UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEXANDER BAYONNE STROSS,

          Plaintiff,

   v.

ZILLOW INC, TRULIA LLC,

          Defendants.

CASE NO. 2:21-cv-01489-RAJ-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Alexander Bayonne Stross ("Stross") brings this action against Defendants Zillow, Inc. ("Zillow") and Trulia, LLC ("Trulia") (collectively "Zillow") for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106. Stross alleges that Zillow committed direct infringement by accessing his registered photographs ("the Works") through an MLS, displaying the Works after the listing terminated in violation of licenses, and by designing and programming its website to copy, reproduce, and display photographs for which it had no rights or license. Dkt. 23 (First Amended Complaint "FAC").

Zillow seeks dismissal of the FAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Stross's copyright infringement claims are indistinguishable from those that the Ninth Circuit held to be precluded as a matter of law in *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th Cir. 2019).

Having reviewed the parties' briefing on the motion and the balance of the record, the undersigned recommends that the motion to dismiss be granted.

REPORT AND RECOMMENDATION - 1

# PLAINTIFF'S ALLEGATIONS

The FAC alleges that Zillow has infringed Stross's copyrights in 106 real estate photos (the "Works"). Dkt. 23, FAC ¶¶ 13–14. Stross shot the Works and licensed them to brokers for the purpose of marketing properties online from 2008 through 2014. *Id*. Authorized syndicators of electronic real estate listings supplied the Works to Zillow and Zillow displayed them on its website for that permitted purpose. *Id*. ¶ 28. Zillow exceeded the scope of this license when it kept the Works available on its website after the listings for the properties expired. *Id*. ¶ 32.

In April 2021, Stross sent to Zillow, a DMCA Takedown Notice identifying links to the Works. Dkt. 23 (FAC) ¶ 36 & Ex. 4. Zillow requested that Stross provide links to "the Trulia or Zillow property page where the photo(s) exist and/or the property address for the home where the images live." *Id*. Ex. 4, pp. 30-31. Three days later, Zillow requested Stross to provide "the full property address of the home where these images exist on our site…". *Id*., p. 30. Stross did not respond. Six months later, Stross filed this lawsuit. Dkt. 1.

# STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(6), dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990)). In considering a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

REPORT AND RECOMMENDATION - 2

(citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In making this assessment, the Court accepts all facts alleged in the complaint as true and makes all inferences in the light most favorable to the non-moving party. *Barker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). The Court is not bound to accept the plaintiff's legal conclusions. *Iqbal,* 129 S.Ct., at 1949–50. While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

## DISCUSSION

Zillow argues that Stross's claims for direct and indirect infringement fail as a matter of law because the facts alleged in the FAC are indistinguishable from those held insufficient to establish liability on either ground in the Ninth Circuit case of *VHT, Inc. v. Zillow Group, Inc.,* 918 F.3d 723 (9th Cir. 2019). Stross argues that his claims differ dramatically from those in *VHT*.

In *VHT*, the Ninth Circuit held that Zillow was not liable, as a matter of law, for displaying photos of off-market properties that it received in feeds of listings from providers who authorized that use. The plaintiff in *VHT* (not unlike Stross) shot photographs of properties and licensed them to real estate agents for use in such listings. *VHT*, 918 F.3d at 730. "VHT asserted that Zillow directly infringed the photos displayed on [Zillow's] Listing Platform[1] after a real estate property was sold because VHT's license agreements only authorized use of those photos in relation to the sale of the property." *Id*. at 732.

---

[1] The Ninth Circuit's opinion in *VHT* uses the shorthand "Listing Platform" to refer to "the core of [Zillow's] website, featuring photos and information about real estate properties, both on and off the market." 918 F.3d at 730.

REPORT AND RECOMMENDATION - 3

Zillow received the photos in *VHT* (as it received the Works in this case) "through digital feeds from real estate agents, brokerages, and multiple listing services, among others (collectively 'feed Providers')" who entered into agreements with Zillow "granting it an express license to use, copy, distribute, publicly display, and create derivative works from the feed data on its websites." *Id*. Some agreements grant Zillow "evergreen" rights permitting use of photos without restrictions on time or purpose, while others grant "deciduous" rights that require photos to be taken down once the listing in which they were received "is removed (for example, when the property sells) …." *Id*. at 733. Zillow's website employs automated programming that "treat[s] each photo consistently with its deciduous or evergreen designation" from the source that provided it. *Id*.

Like Stross, VHT provided Zillow with a takedown notice claiming that use of its photos after properties had sold exceeded the scope of VHT's underlying licenses to the providers who had authorized that use by Zillow. *Id*. at 734. As it did in *VHT*, Zillow responded by requesting more information. And like Stross, VHT did not reply before filing suit. However, unlike VHT, Stross provided more details in his DMCA Takedown Notice because he included the URL of the location of the Works on the websites of Zillow and Trulia. As discussed in more detail below, this distinction is important for Stross's contribution theory of infringement.

Stross acknowledges that in *VHT*, the Ninth Circuit considered direct infringement claims against Zillow for the use of photographs uploaded for property listings, and then left active on the Zillow website after the termination of the property listing. Dkt. 28 at 4. In fact, Stross's assertion that "Defendants accessed the works from local multiple listing service ("MLS") feeds, reproduced them on their servers, and displayed them publicly after the properties were sold," (Dkt. 28 at 2), is exactly what the Ninth Circuit held did not support a claim of direct

REPORT AND RECOMMENDATION - 4

infringement in VHT. *See VHT*, 918 F.3d at 732 ("VHT asserted that Zillow directly infringed the photos displayed on the Listing Platform after a real estate property was sold because VHT's license agreements only authorized use of those photos in relation to the sale of the property.").

Stross attempts to distinguish VHT on the ground that "Defendants, on their own initiative, instigated the long-term reproduction and display of the Photographs on the Websites for purposes other than marketing the properties." Dkt. 23, FAC, ¶ 29. Aside from this conclusory statement, Stross does not describe the action Zillow allegedly took to achieve this result. As the Ninth Circuit in *VHT* made clear, the only action that Stross could truthfully allege is that Zillow programmed its websites in advance to continue to display photos that listing providers chose to upload through feeds for which they had authorized this use. *See VHT*, 918 F.3d at 732–33 (describing design of Zillow website). The FAC never alleges that Zillow selected any of Stross's photos to be supplied through those feeds. The only concrete action that the FAC alleges Zillow undertook was "design[ing] and program[ming] their software to copy, reproduce, and display images to which they had no rights or license." Dkt. 23, FAC ¶ 30. Although Stross characterizes the automated processing of images by Zillow's websites and its display of images after listings expired as "active and volitional conduct," this is the same conduct that failed to establish a claim of direct infringement in *VHT*. *See* 918 F.3d at 733–34.

Stross also claims that his case is distinguishable from VHT because Zillow "failed and refused to cease use of the Works" after receiving his notice. Dkt. 28 at 2. VHT also made such a claim ("Zillow failed to remove photos once it received notice that infringing content was on the Listing Platform, a conscious choice that amounts to volitional conduct on Zillow's part."). Zillow contends that the alleged "refusal" to take down the Works does not amount to volitional conduct on its part because it requested additional information in response to Stross's notice and

REPORT AND RECOMMENDATION - 5

Stross does not dispute that he did not respond to the two requests for additional information, just as in *VHT*. Dkt. 23, FAC, Ex. 4; *see VHT*, 918 F.3d at 749 ("Zillow immediately requested information to confirm VHT's copyright ownership and cross-reference the photos with licensing information. VHT was not forthcoming with that information.").

However, Stross is correct that his DMCA Takedown Notice differs from the notice provided by VHT, because Stross identified the physical locations where the Works are stored via the URL. Dkt. 28 at 2 (citing FAC Ex. 4). Therefore, Stross argues his claim survives on the grounds that "fail[ing] to remove photos once it received notice" was "a conscious choice that amounts to volitional conduct on Zillow's part". The Ninth Circuit has "rejected such failure-to-act arguments when an online service provider 'took affirmative action to address the claims' by requesting further information from the estate agents, brokerages, and multiple listing services." *VHT*, 718 F.3d at 732; *Long v. Dorset*, 854 F. App'x 861, 863–64 (9th Cir. 2021) (quoting *VHT*, 918 F.3d at 734). Here however, there is a question of fact as to whether Zillow's response constituted volitional conduct because Stross provided more than simply the physical addresses of the properties depicted in the Works. The Ninth Circuit has indicated that the failure to remove allegedly infringing content "more properly falls in the category of secondary infringement." *VHT*, 718 F.3d at 733. For this reason and as discussed in more detail below, the undersigned concludes that Stross has adequately alleged a claim of material contribution.

Stross also argues that the facts of his case differ from *VHT* because Zillow recently became a realtor. He claims that unlike in VHT, the "FAC focuses on the Defendants' access of the Works through an MLS based on Zillow's role as a real estate brokerage." Dkt. 28, citing FAC ¶¶ 18-28. Further, he contends that once Zillow became a realtor, it became subject to trade rules that prohibited it from displaying photos of off-market properties regardless of rights

REPORT AND RECOMMENDATION - 6

specified by the source years before when the properties were listed. *See* Dkt. 23 FAC ¶¶ 26–27. Stross does not explain how Zillow's obligation to adhere to trade rules reflects volitional conduct. More importantly, Zillow's registration as a realtor in July 2021 (*see* Dkt. 28; Dkt. 23, ¶ 21), post-dates the relevant facts, *i.e.*, when the Works were supplied to Zillow's websites, when Zillow programmed its websites to handle the Works, or when Zillow responded to the DMCA Takedown Notice. Stross fails to explain how assuming the obligations of a realtor makes Zillow liable for alleged acts of infringement which occurred at an earlier date.

In summary, the undersigned concludes that Stross's attempts to distinguish the facts of his case from those in *VHT* fail. Stross took real estate listing photos during the same time period at issue in *VHT*. Stross licensed the photos to realtors to market the listings just like the plaintiff in *VHT*. In *VHT* as here, the realtors distributed the listings to Zillow through automated data feeds, Zillow's websites automatically applied the permissions specified for the photos by the feed providers, and the websites kept the photos after the listings expired as a result.

B.      Failure to Allege Direct Infringement

Allegations of infringement must "'demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Stross claims that "Defendants committed direct infringement by (1) accessing the Works through an MLS, (2) then displaying the Works after the listing terminated" without authorization, and (3) "by intentionally designing and programming its website to copy, reproduce, and display photographs it had no rights or license to."

Direct infringement requires actively infringing volitional conduct. A "defendant who does nothing more than operate an automated, user-controlled system" is not "strictly liable for

copyright infringement." *VHT*, 918 F.3d at 732 (cleaned up). Direct liability requires active conduct that directly causes infringement. *See id*. at 731–32. In the context of automated systems, the Ninth Circuit distinguishes between "passive participation in the alleged infringement" and "intervening conduct by the website owners." Passive participation in the alleged infringement "is not sufficient to cross the volitional conduct line," whereas active conduct by the website owner is. *Gutenberg v. Move, Inc*., No. 221CV02382ODWAFMX, 2021 WL 5494160, at *2 (C.D. Cal. Nov. 22, 2021) (quoting *VHT*, 918 F.3d at 736, 738). Directly infringing volitional conduct "requires some evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos." *Id*. (cleaned up).

The Ninth Circuit explained that the automated display of listing photos on Zillow's website fails this test, because the display is controlled by permissions that are set by the providers who submit them:

> The feed providers themselves select and upload every photo, along with the evergreen or deciduous designations, that wind up on the Listing Platform. As a result, the photos on the Listing Platform were not "selected" by Zillow. Nor did Zillow "exercise control" over these photos beyond the "general operation of its website." Zillow required feed providers to certify the extent of their rights to use each photo. Consistent with these designations, Zillow's system classified each photo as deciduous or evergreen and programmed its automated systems to treat each photo consistently with that scope of use certified to by the third party.

*Id*. at 733 (quoting *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 670 (9th Cir. 2017) (alterations omitted). In the absence of "intervening conduct" by Zillow as to particular photos, such automated programming, the Ninth Circuit held, did not amount to "volitional conduct necessary to support a finding of direct liability" by Zillow in *VHT*. *Id*. at 733.

REPORT AND RECOMMENDATION - 8

Stross claims that "Defendants' committed direct infringement by accessing the Works through an MLS." Dkt. 28 at 6. However, "accessing" is not an exclusive right granted to copyright holders. *See* 17 U.S.C. § 106. More importantly, Stross does not dispute that "access" at the time the properties were listed was authorized by his license. Dkt. 23, FAC ¶ 28.

Stross also claims that "Defendants intentionally and affirmatively designed and programmed their software to copy, reproduce, and display images to which they had no right or license." Dkt. 23 (FAC) ¶ 30. But the "programming" to which Stross is referring is the same automated rules considered in *VHT*, which treat photographs according to the "evergreen" and "deciduous" designations of rights specified by the feed providers who upload them. *VHT*, 718 F.3d at 733. The Ninth Circuit has already held that such "programming" does not constitute direct infringement. *Id*. at 732. Stross's claim about the "general operation of [Zillow's] website" according to this programming does not describe a volitional act of infringement by Zillow. *Id*.

Stross's assertion that Zillow infringed by "displaying the works" begs the question posed by the volitional act doctrine of whose action caused the display. *See VHT*, 918 F.3d at 731–32 ("'Most of the time that issue will come down to who selects the copyrighted content: the defendant or its customers.'" (quoting *Am. Broad. Cos., Inc. v. Aereo, Inc*., 573 U.S. 431, 453, 134 S.Ct. 2498, 189 L.Ed.2d 476 (2014) (Scalia, J., dissenting))). The only action Stross attributes to Zillow in this regard is the design and programming of its websites to display photos that later became unlicensed, just like in *VHT*. See 918 F.3d at 733. Stross does not allege that Zillow's programming selected any the Works to be used after properties had sold, or that it caused any of the Works to be used in a way different from what was authorized for the feed through which they were supplied. *Compare id*. ("The feed providers themselves select and

upload every photo, along with the evergreen or deciduous designations, that wind up on the Listing Platform. As a result, the photos on the Listing Platform were not 'selected' by Zillow.").

Stross attempts to distinguish *VHT* in citing the unpublished denial in the Western District of Texas of a motion to dismiss in *Stross v. Realty Austin, LLC*, No. 1:20-CV-01071-RP, 2021 WL 2942399, at *3 (W.D. Tex. July 13, 2021), *report and recommendation adopted sub nom*. *Stross v. Boatwright*, No. 1:20-CV-01071-RP, 2021 WL 8083334 (W.D. Tex. Sept. 19, 2021). Stross does not explain how the facts alleged about the underlying computer systems and processes in that case compare to this case or to *VHT*. Notably, the court in the Texas *Stross* case did not substantively distinguish *VHT* either; instead, dismissing it in a footnote because it had been decided on summary judgment, rather than on a motion to dismiss. *Id*. at *3 n.2. However, "the out-of-circuit district court['s decision to] decline to consider [*VHT*] at the motion to dismiss stage … diverges from the Ninth Circuit's approach." *Stross v. Twitter, Inc*., No. 2:21-CV-8360-SVW, 2022 WL 1843142, at *3 (C.D. Cal. Feb. 28, 2022) (citing *Long v. Dorset*, 854 F. App'x 861, 863– 64 (9th Cir. 2021) (affirming dismissal where no volitional conduct was alleged)).

Here, there is no doubt about the identical nature of the relevant facts regarding causation with those in *VHT* because they concern operation of the same systems and processes during the same time. This Court is bound by the Ninth Circuit's decision in *VHT*. Even at the motion to dismiss stage, the Amended Complaint must plausibly allow the Court to infer that Stross will be able to prove some set of facts that would render Zillow liable for direct infringement when no infringement existed in *VHT*. The lack of any factual allegation that the same systems treated the Works any differently than VHT's photos fails to support such an inference. Stross claims that when Zillow "copied the Works to their websites at www.zillow.com and www.trulia.com … to advertise and market the subject property listing … [this] is volitional conduct." Dkt. 28 at 7.

REPORT AND RECOMMENDATION - 10

However, any such copying is exactly what the Ninth Circuit held was not volitional conduct in *VHT* because it occurs automatically in response to feed providers uploading images to Zillow's websites. *See* 918 F.3d at 733. Stross fails to identify any portions of the FAC that allege anything beyond the "general operation of the Websites and programming" that were found not to be directly infringing in VHT.

Stross also relies on *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F.Supp.3d 1089 (N.D. Cal. 2021). However, in *Atari*, the Northern District of California found, just like in *VHT*, that the defendant was not the volitional cause of the automated reproduction and display on its website of images that users uploaded to be printed on physical goods. *Id*. at 1112–13. It held that a fact question existed about whether the website operator later instigated the manufacturing and sale of goods bearing those images "with no involvement from the artists who uploaded the designs." *Id*. at 1113. Here, Stross does not allege any action by Zillow beyond programming its websites to display the Works in the manner authorized by those who provided them.

Stross argues that Defendants, "on their own initiative, accessed the Works from MLS listing, then created, designed, and programmed their software to copy and display photographs for their own commercial benefit …." Dkt. 28, p. 9 (citing FAC ¶¶ 28–35). However, the FAC alleges that Zillow obtains property listings "from the MLS through an Internet Data Exchange 'IDX' feed …," (FAC ¶ 23), and the "programming" for handling the content of these feeds necessarily preceded the receipt of their content. *See* 918 F.3d at 732–33. The FAC does not and cannot truthfully allege that Zillow initiated the transfer of the Works to its websites or that it took any intervening action affecting how the Works were displayed.

Stross also argues that "[i]f Defendants programmed their Websites appropriately," removal of listings from the MLS "should have resulted in the removal of the Works from the

REPORT AND RECOMMENDATION - 11

Websites and the Defendants' servers after the listings expired." Dkt. 28, p. 9. However, this argument necessarily concedes that the programming that kept the Works available was automated and the fact remains that merely hosting a photograph that someone else uploaded to a server is not a volitional act of copyright infringement. *See Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1081 (9th Cir. 2021) (volitional conduct found where website did not merely function as an online platform where third-party users independently upload and share materials, but was a website managed by the defendant itself).

*VHT* establishes that Stross's FAC is insufficiently plead. It also demonstrates that granting leave to amend is futile because Stross cannot dispute that the allegedly infringing uses of the Works on Zillow's website result solely from the same automated programming described in *VHT,* which were deemed to be not directly infringing. Accordingly, the undersigned recommends that Zillow's motion to dismiss Stross's claim for direct infringement be granted.

C.  Contributory Infringement

"Contributory liability requires that a party '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *VHT*, 918 F.3d at 745 (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)). In this case, Stross asserts a theory of material contribution.

As explained by the Ninth Circuit in *Perfect 10, Inc. v. Giganews*, 847 F.3d 657, 671 (9th Cir. 2017), a computer system operation is liable under a material contribution theory of infringement "if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works."

In *VHT*, the plaintiff identified the allegedly infringing images by property addresses only and argued that the jury could have reasonably decided that Zillow had the means to identify and remove the images. Zillow testified throughout trial that to systematically or swiftly take down multiple photos, it required the Zillow Image ID, a number contained in the URL ("Uniform Resource Locator) for each image. The Ninth Circuit agreed that merely identifying physical property addresses is insufficient to allow Zillow to take "simple measures" to remedy the violation because Zillow "receives multiple copies of the same photograph, depicting the same property, with the same listing agent, from different feeds." *VHT,* 9178 F.3d at 745.

Stross did not merely identify the Works by their physical property addresses in the DMCA Takedown Notice to Zillow and Trulia. Stross provided "the exact URL location of the infringing photographs." Dkt. 23, FAC, ¶¶ 36-39, Ex. 4. After it received the DMCA Takedown Notice, Zillow requested either the "URL to the Trulia or Zillow property page where the photo(s) exist and/or the property address of the home where the images live" to locate and remove the images. Dkt. 23, FAC, Ex. 4 at 24.

On its face, Stross's DMCA Takedown Notice appears to contain the URL to the Trulia or Zillow property pages and Zillow acknowledges that Stross provided the URLs. Zillow argues now that Stross failed to allege that the URLs he did provide either identified the subject property or contained "the Zillow Image ID" referred to by the Ninth Circuit in *VHT* or that he provided the URLs in a machine-readable form that Zillow's system can process, "because the scanned copy of the notice attached to the FAC shows that he did not." Dkt. 29 at 8.

At this stage of the litigation and based on the allegations contained in the FAC alone, the Court is unable to conclude that the information contained in the DMCA Takedown Notice was specific enough to allow Zillow to take "simple measures" to remedy the violation. The FAC

plausibly alleges that Zillow had actual knowledge of the infringements (*i.e.*, that the Works remained on Zillow's property pages past their license dates) when it received the DMCA Takedown Notice and failed to take down the Works. However, even assuming this knowledge, there are no allegations of any direct infringement that occurred after Zillow received the DMCA Takedown Notice. As discussed in more detail below, Zillow cannot be held secondarily liable unless there has been direct infringement by a third party.

D.     Vicarious Infringement

One "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." See *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S.Ct. 2764, 162 L.Ed.2d 781 (2005). Thus, Stross must allege that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement. *Grokster* further explains the "control" element of the vicarious liability test as the defendant's "right and ability to supervise the direct infringer." *Id.* at 930 n. 9, 125 S.Ct. 2764.

In *VHT*, the Ninth Circuit found that "the vicarious liability theory [did not] fit the Zillow platform" because "there was insufficient evidence that Zillow had the technical ability to screen out or identify infringing VHT photos among the many photos that users saved or uploaded daily to Digs." *Id*. Here, it is sufficiently alleged that Zillow had the technical ability to screen or identify the Works based on the URLs included in the DMCA Takedown Notice. However, the FAC does not sufficiently allege direct infringement of the Works or financial benefit to Zillow.

To establish that Zillow is secondarily liable, Stross must allege that there has been direct infringement by third parties. *See Napster*, 239 F.3d at 1013 n. 2 ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party.").

REPORT AND RECOMMENDATION - 14

Thus, and even if the DMCA TakeDown Notice provided sufficient information for Zillow to "systematically or swiftly take down a large number of photos," the FAC does not allege that any underlying direct infringements occurred after Zillow received such information. The FAC variously describes these alleged infringements as consisting of the "display" or the "publication and/or distribution of the Works on the Websites beyond the time and scope of licenses granted by Stross." Dkt. 23, FAC ¶¶ 53–54, 60, 62. However, there are no allegations of when such display, publication, or distribution is supposed to have occurred and merely making a work "available" for public display or other unauthorized use does not constitute an infringement of the exclusive rights in copyrighted works granted to authors under 17 U.S.C. § 106. *See also*, *VHT,* where the Ninth Circuit found that where it was not proven that photographs were actually shown to users on Zillow's website, "substantial evidence did not support a finding of direct infringement of VHT's public display rights." *VHT*, 918 F.3d at 736; *see also*, *EVOX Prods., LLC v. Verizon Media Inc.*, No. CV202852CBMJEMX, 2021 WL 3260609, at *2 (C.D. Cal. May 5, 2021) ("fail[] to allege Defendants 'actually served' … images to any member of the public ….").

      Zillow also contends that it is not plausible that Stross could amend to assert that any underlying infringements occurred after April 2021 – the date of the DMCA Takedown Notice. Because all the Works were taken and presumably uploaded to Zillow in active listings between 2011 and 2014 (*see* Dkt. 23, FAC ¶ 15), there is no reason to assume that any member of the public accessed any of those images in 2021, after the subject properties had been off the market for seven years or more.

      Zillow argues that the FAC does not and cannot plausibly assert that any of the allegedly infringing images were "actually served" to the public at time when Zillow allegedly had the

REPORT AND RECOMMENDATION - 15

ability to prevent such distribution. Stross does not dispute the failure of the FAC to allege that any underlying directly infringing displays occurred after the DMCA Takedown Notice. Stross also provides no authority contrary to the above cited cases, which require a plaintiff to plausibly allege that images were actually served to members of the public.

As to financial benefit, the FAC contains only vague and conclusory statements that "[a]s the content on the Websites is displayed for the Defendants' own commercial purposes, the Defendants had a direct financial interest in the infringing activities alleged herein" and that as a result of the alleged vicarious infringement "Zillow and Trulia obtained direct and indirect profits they would otherwise not have realized but for the infringements of the Works." Dkt. 23, ¶¶ 55, 56. *See e.g.*, *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500 (E.D. Pa. 2006) (finding "vague and conclusory" an allegation of a link between Google's advertising revenue, the number of Google users, and Google's "participation in the alleged infringement.").

For these reasons, the undersigned recommends that Zillow's motion to dismiss Stross's vicarious infringement claim should be granted.

## CONCLUSION

The undersigned recommends that Zillow's motion to dismiss be granted because the FAC fails to allege a volitional act of direct infringement by Zillow or a failure of Zillow to act despite knowledge of direct infringement by others.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

REPORT AND RECOMMENDATION - 16

Objections, however, may be filed and served upon all parties no later than **July 11, 2022**. The Clerk should note the matter for **July 13, 2022**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed twelve (12) pages.  The failure to timely object may affect the right to appeal.

DATED this 21st day of June, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge